**36 PAGES**

CHRISTIAN L. RAISNER, Bar No. 133839
JORDAN D. MAZUR, Bar No. 257899
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
Telephone  (510) 337-1001
Fax  (510) 337-1023
E-Mail:  bankruptcycourtnotices@unioncounsel.net
            craisner@unioncounsel.net
            jmazur@unioncounsel.net

Attorneys for Plaintiffs  Stationary Engineers Local 39
Trust Funds and Stationary Engineers Local 39, International
Union of Operating Engineers AFL-CIO

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA (SACRAMENTO DIVISION)

| | |
|---|---|
| In Re | Case No. 10-31713 |
| WILLIAM ROGER ESHELMAN, aka BILL ESHELAMN fdba A/C SERVICE AND DESIGN COMPANY aka WILLIAM R. ESHELMAN aka WM. R. ESHELMAN, | CHAPTER 7 |
| Debtor. | |
| STATIONARY ENGINEERS LOCAL 39, INTERNATIONAL UNION OF OPERATING ENGINEERS AFL-CIO, | Adv. Proc. No. 10-02476-A |
| | (Lead Case in Consolidated Cases) |
| Plaintiff, | **(PROPOSED) PLAINTIFFS' FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| WILLIAM ROGER ESHELMAN, et al., | |
| Defendant. | |
| PAUL BENSI, BART FLORENCE, et al., | Adv. Proc. No. 10-02473-A |
| Plaintiffs, | Judge:    Hon. Michael S. McManus |
| v. | |
| WILLIAM ROGER ESHELMAN, et al., | |
| Defendant. | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to Fed. R. Civ. P. 52 (a), made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7052 and 9014, the Court makes its findings of fact and conclusions of law concerning the adversary proceedings 10-02473 and 10-02476.  Plaintiffs brought these adversary proceedings on behalf of the Stationary Engineers Union Local 39, International Union of Operating Engineers AFL-CIO and on behalf of Paul Bensi, Bart Florence, Jerry Kalmar, and Lyle Setter, in their capacities as trustees of the Stationary Engineers Local 39 Pension Trust Fund; Stationary Engineers Local 39 Annuity Trust Fund; and Stationary Engineers Local 39 Health and Welfare Trust Fund on August 16, 2010 and amended the complaint after the Court granted leave to amend on January 25, 2012 and May 7, 2012.  The Court issued rulings on Defendant's motions to dismiss on November 8, 2010, April 5, 2012, and June 29, 2012.

The parties filed pre-trial briefs and alternative direct testimony prior to the evidentiary hearing.  The Court accepted received evidence and live testimony at trial on September 6, 2012 and heard closing arguments on September 7, 2012.  Weinberg, Roger and Rosenfeld, by Jordan Mazur and Emily Rich appeared representing Plaintiffs.  Wayne A. Silver appeared representing Defendant.  Both parties also presented witnesses at the hearing.

The Court finds as follows:

## I.    FINDINGS OF FACT

### A.    INTRODUCTION

#### 1.    BACKGROUND

1.    Plaintiff the Stationary Engineers Local 39 is a labor organization, with its principal office in San Francisco, California. (Plaintiffs' Trial Exhibit 47, p. 104-139 (BATES stamped P 0103-P 0138)

2.    Plaintiffs the Local 39 Trust Funds are multi-employer benefit plans established pursuant to Trust Agreements, with their principal place of business in San Francisco, California. (Plaintiffs' Trial Exhibit 47, p. 2-103 (BATES stamped P 0001-P 0102)

///

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3.     The Local 39 Trust Funds are third-party beneficiaries of a collective bargaining agreement ("CBA") between the Debtor and Stationary Engineers Local 39 of the International Union of Operating Engineers, ("Stationary Engineers Local 39").  (Florence Dec. at ¶ 10-11)

4.     Defendant William Eshelman is an individual and debtor in this Chapter 7 bankruptcy case and has an address at 145 N. Hancock Park Dr., Mountain House, CA, 95391. (Plaintiffs' Trial Exhibit 45, Defendant's Answer to Second Amended Complaint, p. 2, ln. 4)

5.     At times relevant hereto, the Defendant was the owner and operator of a business known as A/C Service & Design Company and was an active participant in the management of the business. (Florence Dec. at ¶ 8)

6.     Defendant employed members of Stationary Engineers Local 39 and entered into a collective bargaining agreement covering their work.  (Florence Dec. at ¶¶ 5, 9)

7.     Bart Florence, along with Trustees Paul Bensi, Jerry Kalmar and Lyle Setter, collectively make up the Board of Trustees (hereinafter "Trustees") of the Local 39 Trust Funds, which is comprised of two Employer Trustees and two Union Trustees.  (Florence Dec. at ¶ 2)

8.     The Trustees have the exclusive authority and discretion to control and manage the operation and administration of the Local 39 Trust Funds (hereinafter referred to as "Administration").  (Florence Dec. at ¶ 2)

9.     The Administration of the Trust Funds includes the responsibility by the Trustees: to ensure all contributions due from all contributing employers to the Trust Funds are collected; and to maintain suitable and adequate records of and for the Administration of the Trust Funds. (Florence Dec. at ¶ 2)

10.     One employer that became signatory to a CBA with Local 39 was A/C Service & Design.  (Florence Dec. at ¶ 5, Plaintiffs' Trial Exhibit 47, p. 104-139 (BATES stamped P 0103-P 0138))

11.     As part of the normal course of business, the Union retains copies of collective bargaining agreements that the Union has with employers, which specify that certain contributions must be paid over to the Trust Funds for each hour of covered work performed or paid for.  (Florence Dec. at ¶ 4)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

2

12. On September 29, 2005, the Defendant William Eshelman signed a Letter of Understanding agreeing to the terms and conditions set forth in Collective Bargaining Agreement by and between AC Service & Design Company and Stationary Engineers Local 39 (the "CBA"), which required Defendant to remit monthly contributions for the purpose of providing employee benefits to the Stationary Engineers Local 39 Pension Trust Fund; Stationary Engineers Local 39 Annuity Trust Fund; and the Stationary Engineers Local 39 Health and Welfare Trust Fund ("Local 39 Trust Funds"). (Florence Dec. at ¶ 9)

**2.    THE TRUST FUNDS**

13. When an employer becomes signatory to the CBA, the employer is also bound by the language of those agreements to the Trust Fund Agreements applicable to that employer. (Florence Dec. at ¶ 10)

14. Each of the respective Local 39 Trust Funds is governed by a Trust Agreement which requires Defendant to make contributions to the Local 39 Trust Funds and governs Defendant's responsibilities to the Local 39 Trust Funds. Each of the Trust Agreements for the respective Local 39 Trust Funds states that the Trust Fund "shall consist of all Contributions required by the [CBA] or Subscriber's Agreement to be made for the establishment and maintenance of the [respective] Plan," and contributions, upon the date required to be made, constituted assets of the Trust Funds. (Florence Dec. at ¶ 11)

15. The Trust Funds administer and pay out the earned pension benefits of over 6,500 covered employees on a monthly basis. The monthly benefits paid total approximately $4 million in retirement benefits. (Plaintiffs' Trial Exhibit 46, Trial Declaration of Bart Florence ("Florence Dec.") at ¶ 15)

16. The Trust Funds administer health and welfare benefits for over 3,000 covered employees and their families and eligible dependents at a cost of over $4.5 million per month. (Florence Dec. at ¶ 16)

17. The Trust Funds administer annuity benefits for over 4,500 covered employees saving for retirement. (Florence Dec. at ¶ 17)

///

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

3

18.     The Trust Funds provision of benefits is dependent on the contributing employers meeting their respective obligations to pay over earned fringe benefits for covered employees' hours worked.  The Trust Funds ability to meet benefit obligations to covered employees is compromised each time an employer fails to pay over the money owed for benefits earned. (Florence Dec. at ¶ 18)

19.     Monthly report documents are sent to employers every month, due to be returned with payment on the 10th of the succeeding month. Liquidated damages of 10% are assessed under the Trust Agreements for any amount unpaid after the 20th of the month after the reports were sent (the "delinquent date"). (Florence Dec. at ¶ 19)

20.     When an employer complies with payment obligations, the account does not come to the attention of the trust fund administrator Benesys and the administrator takes no further action. (Florence Dec. at ¶ 20)

21.     If a payment is missed or submitted late, Benesys sends a delinquency notice and bill, including liquidated damages and interest under the trust agreement. (Florence Dec. at ¶ 21)

22.     When the Trust Funds receive partial payment from an employer, each obligation is satisfied in full with funds available, with health and welfare being the last obligation satisfied and pension being second-to-last.  (Florence Dec. at ¶ 22)

23.     The Local 39 Health & Welfare Fund is administered by a third-party administrator, Benesys.  Signatory employers receive a blank report with space for employee names and identification information, along with a return address to send the report and contributions.  The Trust Fund often sends reports with the names from last month's employer-submitted report already listed, and the employer can add, subtract, or otherwise alter the list of employees for that month. (Florence Dec. at ¶ 23)

24.     An employee participant to the Health & Welfare Fund must have 80 or more hours in a month in order to be covered for Health & Welfare benefits. (Florence Dec. at ¶ 24)

25.     Coverage under the Health & Welfare Fund consists of full coverage for the employee, spouse, and all eligible dependents.  (Florence Dec. at ¶ 25)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

4

26.     The Annuity Trust Fund is a defined contribution plan for covered employees to accumulate money for retirement.  Annuity is a fringe benefit paid on each straight time hour worked or paid for by an employer and is not taxed at the time paid into the fund.  (Florence Dec. at ¶ 27)

27.     Covered employees can permit the Annuity Fund to invest their benefit for them, or else may elect a self-directed option.  (Florence Dec. at ¶ 28)

28.     Covered employees are eligible to receive their Annuity Fund benefit at retirement or upon certain other qualifying events.  (Florence Dec. at ¶ 29)

**3.     DELINQUENCY PROCEDURE**

29.     If a contributing employer fails to make contributions, any workers still employed by that company will cease receiving benefits on the first of the next month absent a cure action by the employer.  Such an event does qualify the employee for COBRA.    (Florence Dec. at ¶ 26)

30.     Each month, a Benesys-generated list identifies employers who are delinquent. The Delinquency Committee, on which Florence sits with an employer trustee, Paul Bensi, meets quarterly to review delinquencies. (Florence Dec. at ¶ 30)

31.      In addition, the Union receives pay stubs and work records from the Union and individual workers showing delinquencies in their employers' fringe benefit contributions. (Florence Dec. at ¶ 31)

32.     When an employer is delinquent, Benesys notifies that employer and sends a bill including liquidated damages and interest. (Florence Dec. at ¶ 32)

33.     When a delinquent employer comes to the Trust Funds' attention, the Delinquency Committee can waive liquidated damages and interest if the employer has not been delinquent in the past twelve months.  Such waiver is a conditional waiver contingent on the employer catching up and remaining current for the next twelve months.  (Florence Dec. at ¶ 33)

34.     The terms of the CBA require that an employer bound by the agreement make contributions for all covered work performed regardless of whether the work is performed by a member of the Union.  (Florence Dec. at ¶ 44)

///

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

5

35.     The basis for the agreement is that the employer agrees that work of the kind described by the agreement is worth the wages and benefits set forth in the agreement. The Union and the Trust Funds rely upon adherence to this basic covenant to survive. (Florence Dec. at ¶ 45

36.     Florence sits on the delinquency committee of the Trust Funds. (Trial Transcript, Day 1 9/7/12 ("Transcript I") p. 40, lns. 8-16)

37.     Florence works with auditors to interpret the CBAs and help clarify any questions auditors may have. (Transcript I, p. 40, lns. 17-23)

38.     The Trust Funds have used Lindquist, LLP as the auditors since approximately 2004.  (Transcript I, p. 41, lns. 2-5)

**4.     THE LETTER OF UNDERSTANDING**

39.     A letter of understanding covers all non-bargaining unit personnel. So if a company is signatory to pay benefits for covered workers, and then enters into an LOU for the non-bargaining unit personnel, the company owes for benefits on all workers.  There are no workers who are not either covered or not covered.  (Transcript I, p. 55, lns. 7-25, p. 56, lns. 1-18)

40.     If an employee is covered by the trust agreements, an eligible spouse would also be covered and receive benefits. However, if both the individual and spouse work for the company, contributions are required to be made for hours worked by each.  This follows from the language in the agreement calling for contributions for all hours worked.  No exception exists for spouses of covered employees. (Transcript I, p. 64, lns. 2-22)

41.     In certain circumstances, owners of companies are not covered.  If a company has a subscriber agreement or LOU, as A/C Service did, the owner is covered and required to make contributions for hours worked. (Transcript I, p. 65, lns. 3-25, p. 66, lns. 1-2)

**5.     LANGUAGE IN THE CONTROLLING DOCUMENTS**

42.     At all relevant times, the Annuity Trust Fund included the language: "The term 'Contributions' means the payment made or to be made to the Fund by any individual Employer under the provisions of a Collective Bargaining Agreement or Subscribers Agreement." (Plaintiffs'' Trial Exhibit 47, p. 5 (BATES stamped P 0004); Transcript I, p. 45, lns. 2-23)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

6

43. At all relevant times, the Welfare Fund included the language: "The term 'Contribution' means any contribution made or to be made to the Fund by an Individual Employer under the provisions of a collective bargaining agreement." (Plaintiffs'' Trial Exhibit 47, p. 38 (BATES stamped P 0037); Transcript I, p. 46, lns. 7-23)

44. At all relevant times, the Pension Trust Fund included the language: "There is hereby created the Stationary Engineers Local 39 Pension Trust Fund which shall consist of all contributions required by the Collective Bargaining Agreements to be made for the establishment and maintenance of the Plan [. . .]." (Plaintiffs' Trial Exhibit 47, p. 72 (BATES stamped P 0071); Transcript I, p. 46, lns. 24-25, p. 47, lns. 1-12)

45. The Stationary Engineers Local 39 (the "Union") is the sole bargaining representative of the workers performing work covered by the CBA. (Plaintiffs' Trial Exhibit 3, p. 3 (BATES stamped P 0104), § 1)

46. The job duties covered by the CBA are clearly enumerated in the agreement. (Plaintiffs' Trial Exhibit 3, p. 4-5 (BATES stamped P 0105-0106), § 4)

47. The employer may select which employees, regardless of Union affiliation, shall be assigned or dispatched to specific work under the CBA. Nothing in the CBA excuses the employer from making contributions for each hour of covered work performed, regardless of the union affiliation of the worker who has performed that work. (Plaintiffs' Trial Exhibit 3, p. 7 (BATES stamped P 0108), § 9)

**B.    DEFENDANT'S DELINQUENCY**

48. Defendant failed, neglected or refused to make timely fringe benefit contributions to the Local 39 Trust Funds as required by the applicable collective bargaining agreements and Trust Agreements, in an unknown amount to be proven, amounting to at least $164,859.97 for delinquent contributions between January 1, 1999 and September 30 2006, plus interest, auditors' fees, liquidated damages, costs, and attorneys' fees as allowed by the Local 39 Trust Agreement. (Florence Dec. at ¶ 12)

49. The Local 39 Trust Funds conducted audits of the employer books and records, and resulting Audit Reports.  (Florence Dec. at ¶ 12)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

7

50.     Stationary Engineers Local 39 filed a grievance under the grievance procedure of the CBA on April 15, 2009 asserting that the employer had not met its obligation "regarding payments to the Local 39 Health & Welfare Plan and the Pension & Annuity Plans on behalf of our members." (Florence Dec. at ¶ 13)

51.     The Local 39 Trust Funds obtained an Order Denying Cross Motions for Summary Judgment from the United States District Court for the Northern District of California, which awards the Funds some of the unpaid contributions detailed above, totaling $10,012.97 to the Health & Welfare Fund, $7,508.75 to the Pension Fund, $3,354.60 to the Annuity Fund, and another underpayment of $13,879.18. (Plaintiffs' Trial Exhibit 6)

52.     In this case, Debtor has withdrawn and is liable for withdrawal liability in the amount of at least $33,972. (Plaintiffs' Trial Exhibit 47, p. 352 (BATES stamp 0351))

53.     Defendant has failed to make any payments on their withdrawal liability obligation under ERISA § 4201, 29 U.S.C. § 1381(a).   (Plaintiffs' Trial Exhibit 45, Defendant's Answer to Second Amended Complaint, p. 2, ln. 8)

54.     The Defendant submitted some Employer Report of Contributions to the Trust Funds.  In signing and submitting these completed reports, the Defendant certified: "that the information contained on this sheet and all continuation sheets is correct; that this report covers all hours during the period for which contributions are required under a written contribution agreement, such as written collective bargaining agreements with Local 39 of the IUOE Stationary Engineers; that the employer is bound by and all payments reported herein are made in accordance with said contribution agreements and applicable Trust Agreement as required by Section 302 of LMRA; and the undersigned agrees to be bound by all of the terms of the Trust Agreement including specifically the provisions describing liquidated damages for delinquencies and other obligations of Employers, and authorizes the depository bank to transfer monies remitted herewith to the appropriate Trust per Instructions Issued by the Trustees thereof the undersigned certifies under penalty of perjury that he or she is duly authorized by the above-named Employer to sign and submit this report on behalf of such Employer."  That language appears on bottom of each of the report forms. (Florence Dec. at ¶ 14)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

8

55.     In this case, A/C Service was responsible for contributions to the Pension Fund, Health & Welfare Trust, and the Annuity Trust.  A true and correct copy of example employer reports from Eshelman are in Plaintiffs' document production at P282-P318. (Florence Dec. at ¶ 34)

56.     Eshelman agreed to enter into a Letter of Understanding so that non-bargaining unit employees would be covered by the Health and Welfare Trust Fund of Local 39.  Eshelman signed the Letter of Understanding on February 22, 1999. (Florence Dec. at ¶ 35)

57.     A regular audit revealed irregularities in A/C Service's contributions and participation in the Letter of Understanding.  (Florence Dec. at ¶ 36)

## C.     DEFENDANT'S DECEITFUL CONDUCT

58.     Defendant deliberately failed to inform Plaintiffs of work he was directing his employees to perform, that was covered under the CBA.  Though the CBA and Trust Agreements required this work to be reported, and Defendant was required by the CBA and Trust Agreements to make contributions on behalf of employees performing covered work for their hours worked, Defendant knowingly failed to report work being performed.  (Florence Dec. at ¶ 40)

59.     Defendant instead elected to report some of the hours of work being performed at his direction and covered by the CBA to other labor organizations and their trust funds. In so doing, Defendant deliberately sought to take advantage of affiliations with at least three separate labor organizations and their trust funds, while failing to comply with the obligations to Plaintiff. (Florence Dec. at ¶ 41)

60.     Defendant and his family members received benefits, including but not limited to health and welfare and pension benefit eligibility, from Plaintiff and other unions and trust funds, without meeting the basic obligations of the agreements with Plaintiff.  (Florence Dec. at ¶ 38)

61.     Eshelman periodically changed the roster of which employees he was contributing for in violation of the agreement.  (Florence Dec. at ¶ 37)

62.     Eshelman was receiving coverage and other employees were being covered for whom contributions were not being made, in violation of the Letter of Understanding.  (Florence Dec. at ¶ 38)

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

9

63.    Eshelman at one point placed a seriously ill personal acquaintance on the payroll for the purposes of receiving benefits under the Letter of Understanding, causing the Local 39 Health & Welfare Trust Fund to become responsible for the treatment of the acquaintance. (Florence Dec. at ¶ 39)

64.    Eshelman deliberately failed to inform the Union and Trust Fund of work he was directing his employees to perform, that was covered under the CBA, even though the CBA and Trust Agreements required this work to be reported, and Eshelman was required by the CBA and Trust Agreements to make contributions on behalf of employees performing covered work for their hours worked.    (Florence Dec. at ¶ 40)

65.    Eshelman instead elected to report some of the hours of work being performed at his direction and covered by the CBA to other labor organizations and their trust funds.  (Florence Dec. at ¶ 41)

66.    In 2006, the Trust Funds had an audit conducted that showed the company was not reporting all of the hours worked to the Trust Funds and therefore failing to make the contributions required for all work performed. (See Plaintiffs' Trial Exhibit 47, p. 321-331 (BATES Stamp P 0320-0330); Florence Dec. at ¶ 42)

67.    When an employer fails to notify the Trust Funds of hours worked, it denies the covered employees the earned benefits from that work performed.  Without knowledge of the hours, the Trust Funds are unable to pursue collection of the contributions or to provide benefits on those hours to covered employees. (Florence Dec. at ¶ 43)

1.    **ESHELMAN REMAINED IN CHARGE, IN SPITE OF CLAIMS TO THE CONTRARY**

68.    Eshelman failed to report himself and claimed that he was not drawing a salary, though he was still running the business and doing estimating work for the Company. Eshelman also claimed that he was not eligible as an owner.    (Transcript I, p. 122, lns. 15-25, p. 123, lns. 1-12; Plaintiffs' Trial Exhibit 51; Defendant's Trial Exhibit E, p. 2 (BATES stamped P 0165), Item #4)

69.    Though he claims that he was not working much for the company, Eshelman remained the sole shareholder, director, and President of A/C Service at all relevant time periods

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

10

through the end of 2007. (Plaintiffs' Trial Exhibit 28, p. 1389-1397 (BATES stamped WAS 001333-001341)

### 2. ESHELMAN RETROACTIVELY ADDED A NEIGHBOR TO HIS PAYROLL TO GET AN OLD FRIEND MEDICAL COVERAGE AND TRIED TO AVOID EXPLAINING THE SITUATION WHEN ASKED UNDER OATH

70.     Defendant retroactively added a neighbor, Mr. Jim Geist, and the neighbor's family to the payroll for health and welfare coverage to ensure coverage for a seriously ill lifelong friend, Mrs. Cherin Geist.  (Transcript I, p. 82, lns. 13-25, p. 83, lns. 1-9, p. 85, lns. 14-22, p. 174, lns. 2-25, 175, lns. 1-20)

71.     Eshelmen added Mr. Geist retroactively to ensure that the effective date of the coverage was moved.  (Transcript I, p. 85, lns. 23-25, p. 86, lns. 1-2)

72.     When asked about this situation at his Deposition, Defendant lied and pretended not to remember Cherin – saying instead that he remembered "Sherry" as if that might be a different person -- though he had in fact grown up with her. Defendant had also earlier testified that he knew Mr. Geist through his wife Cherin.  (Transcript I, p. 130, lns. 19-25, p. 131, lns. 1-7, p. 132, lns. 18-25, p. 133, lns 1-25, p. 134, lns. 1-2)

### 3. ESHELMAN SIGNED WITH THREE UNIONS AND USED WORKERS TO PERFORM COVERED WORK AT HIS WHIM IN VIOLATION OF THE LOCAL 39 AGREEMENT

73.     Defendant ran A/C Service and was responsible for dispatching workers and choosing which workers serviced which clients.  (Transcript I, p. 109, lns. 21-25)

74.     A/C Service was signatory to CBAs with three unions.  (Transcript I, p. 123, lns. 16-25)

75.     Eshelman selected workers from each of the three unions and then made contributions only to the union to which that worker belonged, irrespective of whether the work performed was covered under another union's contract or not.  (Transcript I, p. 125, lns. 11-21)

76.     The CBA does permit the selection of employees from outside the Local 39 union, but contributions must still be made for covered work.  (Transcript I, p. 127, lns. 6-9)

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

11

**4.**    **ESHELMAN INTENTIONALLY VIOALTED THE AGREEMENTS AND ADMITTED TO DOING SO**

77.    Eshelman deliberately violated the contract respecting the 30-day probation period.  Eshelman decided he would willingly violate the contract and cure the violations later after he decided on employees after 90 days.  (Transcript I, p. 128, lns. 2-25, p. 129, lns. 1-7, p. 141, lns. 4-7)

78.    There are duties covered by the CBA that members of other unions performed for A/C Service. In those cases, A/C Service did not report those hours to the Local 39 Union or Trust Funds and made no contributions for those hours.  (Transcript I, p. 129, lns. 8-21)

79.    Eshelman added money to the paycheck of Spencer Platt in lieu of reporting his work to the Trust Funds, thereby hoping to defraud the Trust Funds avoid making contributions for Platt.  (Transcript I, p. 136, lns. 17-25)

80.    Platt was working over 80 hours per month.  (Transcript I, p. 143, lns. 15-21. Defendant's Trial Exhibit E, p 2 (BATES stamped P 0165), Item #3)

81.    Health and welfare plan contributions must be made for each employee employed for a period of at least 80 hours per month.  (Plaintiffs' Trial Exhibit 3, p. 8 (BATES stamped P 0111), § 15)

82.    Eshelman purported to believe that he was permitted to make decisions about whether to contribute on the basis of his employee handbook even where the unambiguous language of the CBA required him to contribute.  (Transcript I, p. 137, lns. 1-25, p. 138, lns. 1-16, p. 143, lns. 15-21)

83.    Defendant admitted that the discrepancies for the probationary issue were his obligation and the amounts stated to be due are owed.  (Transcript I, p. 141, lns. 8-18, p. 142, lns. 4-24, p. 143, lns. 10-14)

84.    Defendant deliberately violated the agreement and purportedly planned to make required payments later when he "figured it would all get sort of swept up in the audit."  There is no support in the contract for Defendant's decision to violate and then remedy the violation only after the Plaintiffs incur the expense to audit Defendant and discover the failure to pay.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

12

(Transcript I, p. 141, lns. 8-18, p. 142, lns. 4-24, p. 143, lns. 10-14; Transcript II, p. 51, lns. 12-24)

**D.   THE 2006 AUDIT**

85.   Audits can be performed for a number of reasons, pursuant to the Trust Agreements. There are no limits to the number of audits performed in a given period of time. The Trustees have conducted audits outside of the "every four years" construct. (Transcript I, p. 63, lns. 6-22)

86.   Kyle Whittemore was the supervisor/manager responsible for Lindquist's management of the audit. (Transcript I, p. 66, lns. 3-6)

87.   Lindquist is responsible for auditing the trust plans and testing employer contributions to ensure that proper contributions are being made by each employer. (Transcript I, p. 70, lns. 7-13)

88.   Payroll compliance testing, which looks at a specific set of records and makes an assessment based on the Trust Funds' request, is what is meant here by an "audit." (Transcript I, p. 71, lns. 6-19)

89.   Lindquist looked at records from the third party administrator, tax returns, cash disbursements, and other records indicating the actual amount of contributions required to be made in testing A/C Service.  (Transcript I, p. 72, lns. 4-9)

90.   Though the auditors look at the third-party administrator's records, the testing itself relies on the employer's records. (Transcript I, p. 74, lns. 6-9)

91.   Lindquist requested from A/C Service CBAs, monthly transmittals, time cards, quarterly payroll tax returns, detailed documentation of the job classifications of employees NOT reported to the Trusts, monthly transmittals to other trust funds, worker's compensation reports, seniority lists, 1099s, and cash disbursement journals. (Plaintiffs' Trial Exhibit 47, p. 319-320 (BATES Stamp P 0318-0319) )

92.   The audit testing includes interviewing employers and workers responsible for contributions being remitted.  (Transcript I, p. 74, lns. 22-25, p. 75, lns. 1-4)

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

13

93.     The audit was created in the regular course of business and made at the time the audit was completed.  (Transcript I, p. 75, lns. 10-25)

94.     The audit was conducted because of a request from the Trust Funds.  (Transcript I, p. 172, lns. 9-19)

95.     The Trust Funds obtained information about Mr. Geist being added retroactively, as well as information that Eshelman was not making contributions for his own work and that he was paying workers to not accept coverage by adding money to their checks.  Each of these raised significant concerns and led to the commissioning of the audit.  (Transcript I, p. 174, lns. 2-25, 175, lns. 1-20; Plaintiffs' Trial Exhibit 51)

96.     The validity of the audit is presumed to be accurate. *Brick Mason's Pension Trust vs. Industrial Fence and Supply*, 839 F. 2d. 1333 (9th Cir. 1988).

97.     From 2000 to 2008, A/C Service had over $5.4 Million in income.  (Plaintiffs' Trial Exhibit 28, p. 260-263 (BATES stamped WAS 000259-000262))

98.     The company received millions of dollars in payments into its bank accounts. (Plaintiffs' Trial Exhibit 28, p. 264-354 (BATES stamped WAS 000263-000353))

99.     The General Ledger shows the company paid for vehicles, credit cards, furniture, building improvements, entertainment reimbursement, goods, payroll, taxes, insurance and many other categories of expenses.  (Plaintiffs' Trial Exhibit 28, p. 363-1362 (BATES stamped WAS 000362-001306))

100.     The General Ledger shows that at times the company had a balance of over $350,000.   (Plaintiffs' Trial Exhibit 28, p. 363-1362 (BATES stamped WAS 000362-001306), see specifically p. 986-990 (BATES stamped WAS 000624-000629))

**E.     FACTUAL CONCLUSIONS FROM THE EVIDENCE PRESENTED**

101.     At the time Defendant entered into the performance of their obligations under the Memorandum Agreement, the CBA and the Trust Agreements each of them, under federal and state laws governing employee benefit and wage obligations, Defendant did not intend to meet those obligations as required by law.

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

14

102.    Instead, Defendant falsely made and adopted the representations contained in the Memorandum Agreement,  the CBA and the Trust Agreements and deceitfully represented that he intended to abide by the terms of the Memorandum Agreement, the CBA and the Trust Agreements.

103.    However, the Defendant acted with false pretenses by portraying himself as performing their duties under the Memorandum Agreement and the CBA and the laws respecting employee benefits.

104.    Throughout his time as a contributing employer, Defendant held himself out to be complying with these obligations, despite the fact that while he made reports and contributions on some of the work, he was simultaneously directing other employees to perform covered work that Defendant deliberately failed to report to Plaintiff.

105.     Eshelman made assessments throughout his operation of the Company about individual workers' fitness for each task the Company needed to perform, rather than following the CBA requirements for determining which workers with specific union affiliation should be used to perform the required tasks.

106.    Defendant knowingly made the false representations through his reports and conduct toward the Plaintiff throughout the period of time that the Defendant was required to make reports and contributions under the CBA and Trust Agreements.

107.    Plaintiff relied, to its detriment, on Defendant's false representations made by word and deed, especially their show of falsely portraying himself as willing to act as a Local 39 Union signatory contractor and to abide by the CBA and make the payments and perform the obligations required.  In fact, Defendant did not intend to abide by his promises, while pretending that he did so intend.  As a result, Plaintiff suffered losses.

108.    Defendant knowingly failed and refused to properly pay the benefit contributions as promised, and the full amount of them, despite having the ability to do so, based upon the business earnings on account of work performed under the labor agreements and their financial capacity.  Instead of paying fully for labor under the CBA, Defendant chose to use the funds for

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

15

his own benefit. By this conduct, and to the extent of it, Defendant inflicted willful and malicious injury on the Plaintiffs.

## II.    CONCLUSIONS OF LAW

### A.    LAW OF THE CASE

109.    Under the "law of the case" doctrine, "a court should not reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997); citing *Messenger v. Anderson*, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912).  In this case, the Court has already announced the standard for fiduciary responsibility under §523(a)(4).

110.    The Civil Minute Order from November 8, 2010 clearly adopts the *Hemmeter* standard that a Defendant is a fiduciary for purposes of (a)(4) if Defendant is an ERISA fiduciary under §1002(21) of ERISA.  (Minute Order in Case 10-02473-A, Doc. No. 20, p. 2, final two full paragraphs)

111.    Defendant seemingly challenged the applicability of *Hemmeter* in his pretrial brief and at trial, but there can be no doubt that the Court has already ruled on this issue. Further, the Court has already addressed the definition of defalcation – Defendant's citations to Judge Learned Hand notwithstanding – adopting the *In re Lewis* standard that specifically includes innocent, as well as intentional or negligent defaults, and does not require intent to defraud. (Court Docket #20, p. 4, citing *Lewis v. Scott, (In re Lewis)*, 97 F.3d 1182, 1187 (9th Cir. 1996).)

112.    The Court has also already made the determination that the general rule governing announced in the *Cline* decision, which requires that contributions be paid over before becoming plan assets, has a significant exception where the outstanding contributions are defined as plan assets by the agreement governing the plan under *Temecula* and other cases. (Minute Order in Case 10-02473-A, Doc. No. 20, p. 3, second through fourth full paragraphs)

113.    The Court has also ruled on the Defendant's contention that the fiduciary relationship arises as the result of the obligor's failure to pay the contributions, suggesting that the relationship does not pre-date the failure to pay – a requirement under §523.

114.    The Court has already held that the *Hemmeter* analysis clearly rejects this argument, finding that the trust res is identified by the creation of the plan itself and the fiduciary

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

16

duties necessarily arise on the creation of the plan. (Minute Order in Case 10-02473-A, Doc. No. 20, p. 3, final two paragraphs)

115.    With each of these legal questions having already been answered, the Court is barred from revisiting them at this stage.

> The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. *Lockert v. United States Dept. of Labor*, 867 F.2d 513, 518 (9th Cir. 1989). Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case.

*Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).

> The "law of the case" rule ordinarily precludes a court from re-examining an issue previously decided by the same court, or a higher appellate court, in the same case.

*Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833-834 (9th Cir. Or. 1982).

116.    The Court's earlier decision is law of the case on "issues decided in earlier stages of the same litigation.," *Agostini*, 521 U.S. at 236.  See also *Little Earth of the United Tribes, Inc. v. United States Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1438 (8th Cir. 1986) ("The law of the case doctrine applies to issues implicitly decided in earlier stages of the same case.").

117.    Reviewing courts should only revisit their own decisions "if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice," and the doctrine of law of the case "prevents the relitigation of settled issues in a case, thus protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency."  *Little Earth*, at 1441.

118.    The Court has determined that the unpaid contributions are plan assets when the trust language defines them as such and that a defendant who is a fiduciary under ERISA is a fiduciary for purposes of 523(a)(4).  The decision is neither clearly erroneous nor does it cause a manifest injustice.  The law of the case here, that the contributions Eshelman was obligated but failed to pay are ERISA plan assets, should be accepted.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

17

**B.      DEFENDANT COMMITTED DEFALCATION OF DUTY UNDER § 523(A)(4), AS A FIDUCIARY UNDER ERISA**

### 1.      AN ERISA FIDUCIARY SATISFIES THE REQUIREMENT FOR FIDUCIARY UNDER § 523(A)(4)

119.    Courts in the Ninth Circuit construe ERISA's definition of fiduciary liberally. *Arizona State Carpenters Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir.1997); *Thomas, Head & Griesen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994).

120.    Fiduciary duty is viewed not in terms of formal trusteeship, but is instead functional, thus expanding the universe of persons subject to fiduciary duties.  *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1419 (9th Cir. 1997), citing *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir.), *cert. denied*, 516 U.S. 914 (1995), and *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

121.    Actions, not an official designation of a role, determine whether an individual "enjoys fiduciary status." *Acosta v. Pacific Enterprises*, 950 F.2d 611, 618 (9th Cir.1991). Fiduciary status is established by the relationship undertaken respecting trust assets. (Transcript I, p. 108, lns. 4-8.)

122.    As this Court stated in the Civil Minutes denying Defendant's first Motion to Dismiss: "Only two questions exist under section 523(a)(4) when fraud or defalcation are involved, whether the defendant committed fraud or defalcation and whether it was committed in relation to the debtor's fiduciary responsibilities." (Court Docket #20, p. 2, citing *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994))

123.    Defendant had control over the disposition of that debt, which includes benefit contributions to the Trust Funds, so he falls within the ERISA statutory definition of fiduciary "to [that] extent," 29 U.S.C. § 1002((21)(A) (ERISA definition).  (Court Docket #20, p. 2, citing *Clark v. Glogower (In re Glogower),* 320 Fed. Appx. 809, 812 (9th Cir. 2009); *In re Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001) (holding that a fiduciary under ERISA is a fiduciary under 11 U.S.C. § 523(a)(4)).

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

18

124.    Under ERISA, the definition of "fiduciary" states in relevant part: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets [. . .]." 29 U.S.C. §1002(21)(A).)

125.    A finding that a person is an ERISA fiduciary does not require veil piercing or alter ego, instead it is a functional test.  *See Gray v. Briggs*, 45 F.Supp. 2d 316, 326 (S.D.N.Y. 1999) ("A person may be a fiduciary with respect to certain matters but not others, for he has that status only to the extent that he has or exercises the described authority or responsibility").

126.    ERISA requires "that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp.*, 107 F.3d at 1421.

127.    The Ninth Circuit has strongly indicated the view of the employer-trust fund relationship, holding: "in taking on the obligation to report the basis on which contributions will be made to an ERISA fund, the employer undertakes a fiduciary obligation which must be faithfully and punctiliously observed." *Northern Cal. Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1373 (9th Cir. 1990).

128.    Whether Defendant is a fiduciary for ERISA purposes, then, turns on whether the defendant exercised authority or control over the management or disposition of plan assets. [. . .] [M]ore specifically, the issue is whether, as a matter of law, unpaid contributions can be plan assets. (Court Docket #20, p. 2-3)

129.    In this case, the definition of plan assets is governed by the trust agreements, which includes: "[c]ontributions required by the [CBA] or Subscriber's Agreement to be made for the establishment and maintenance of the [respective] Plan."  (Plaintiffs' Trial Exhibit 38 citing Complaint at paragraph 8, which same language also appears in the First Amended Complaint (Plaintiffs' Trial Exhibit 8) and Second Amended Complaint (Plaintiffs' Trial Exhibit 14) at paragraph 8.)

130.    The Ninth Circuit decision setting out the general rule for unpaid contributions does not address the significance of express language designating unpaid contributions as assets

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

19

of the trust or plan under ERISA. *See Cline v. Industrial Maintenance Eng'g & Contr. Co.*, 200 F.3d 1223, 1230 (9th Cir. Cal. 2000).

131.    Courts have recognized an exception to *Cline* where plan documents, as those at issue in this case do, define plan assets as including "contributions that are required to be paid, unpaid employer contributions are considered plan assets." *Trustees of the Bricklayers & Allied Craftworkers Local 13 Def. Contrib. Pension Trust, et al. v. Canja*, 2011 U.S. Dist. Lexis 81756, *7-8 (D. Nev. 2011), citing, inter alia, *Bd. of Trustees v. Atoll Topui,* 2007 U.S. Dist. Lexis 4307, *4-5 (N.D.Cal.2007); *Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156, 1165 (C.D. Cal. 2006).

132.    The written specification about contributions to be made constituting plan assets in the Trust Agreements places the unpaid contributions here within the exception to the general rule that contributions do not become plan assets until paid over to the plan. (Plaintiffs' Trial Exhibit 38 denying Defendant's Motion to Dismiss, p. 4.

133.    Defendant's suggestion that only benefits withheld from worker paychecks can be plan assets for §523 fiduciary status is misplaced.  The Supreme Court recognized Congress' acknowledgment that fringe benefits "generally compliment, or 'substitute' for, hourly pay" in *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 659 (2006).  The basis for such a finding is clearly rooted in the very foundation of employee benefit plans:

> The current Code's juxtaposition of the wages and employee benefit plan priorities manifests Congress' comprehension that fringe benefits generally complement, or "substitute" for, hourly pay. *See* H. R. Rep., at 357 (noting 'the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted"); id., at 187 ("[T]o ignore the reality of collective bargaining that often trades wage dollars for fringe benefits does a severe disservice to those working for a failing enterprise."); In re Saco Local Development Corp., 711 F.2d 441, 449 (CA1 1983) (majority opinion of Breyer, J.) (substitution of fringe benefits for wages "can normally be assumed, unless the employer is a philanthropist").

*Howard Delivery,* 547 U.S. at 659.

134.    Judge Bardwil recently reached the same conclusion regarding plan assets in the 523(a)(4) context. *See Board of Trustees, et al. v. Bos*, U.S.B.C., E.D. Cal. No. 11-24987, Adv.

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

20

No. 11-02390, Doc. No. 74, p. 9, lns. 25-26, p. 10 ln. 1) (January 12, 2012) (Denying Defendant's Motion for Summary Judgment).

    a.    A number of other district and bankruptcy courts within the Ninth Circuit have recognized and applied the exception to the general rule where the agreement governing the plan identifies *unpaid* employer contributions as plan assets. *J.D.R. Mechanical Services, Inc.*, 99 F.Supp.2d 1115, 1120 (C.D. Cal.1999) (*Cline* does not preclude application of the "commonly applied exception when the plan document itself identifies unpaid employer contributions as a plan asset").

    b.    *In re Barajas*, U.S.B.C., N.D. Cal., No. 10-3096 TEC, ECF No. 44 (9/9/11) (vacation and pension trusts define plan assets to include contributions due but not yet paid).

    c.    *Bd. of Trustees v. KMA Concrete Constr. Co.*, 2011 U.S. Dist. Lexis 100747 (N.D. Cal. 2011) (if a trust fund provides that monies owed to the fund are assets of the fund, then the employer's debt to the fund is a trust "asset," citing *Temecula, supra,* 438 F. Supp. 2d at 1156.

        i.    This exception to *Cline* based of trust language is also accepted outside the Ninth Circuit. *See, e.g., Rahm v. Halpin*(*In re Halpin*), 566 F.3d 286, 290 (2d Cir. 2009) (recognizing that parties are "free to contractually provide for some other result" in plan documents); *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) ("The proper rule … is that unpaid contributions are not assets of the fund unless the agreement between the fund and the employer specifically and clearly states otherwise").

        ii.    *Trustees of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F. Supp. 2d 279, 283 (D. Conn. 2007) (where fund agreements define plan assets as "such sums of money as have been or shall be paid to the Pension Fund by the Employers" and "sums of money that have or will be paid or which are due and owing to the Fund by the Employers," due but unpaid contributions are plan assets).

135.    There is no application here of the proposition that employers must pay the money over before the contributions become plan assets, a broad dictum stated in *Cline v. Indus. Maint. Eng'g & Contracting Co.,* 200 F.3d 1223, 1234 (9th Cir. 2000), applied when plan documents are *not* at issue.

136.    Here the plan documents show the intention to bind signatories from the moment that contributions become due and owing.  (Plainitiffs' Trial Exhibit 47, p. 5 (BATES stamped P 0004); Transcript I, p. 45, lns 2-23; Plainitiffs' Trial Exhibit 47, p. 38 (BATES stamped P 0037); Transcript I, p. 46, lns. 7-23; Plainitiffs' Trial Exhibit 47, p. 72 (BATES stamped P 0071); Transcript I, p. 46, lns. 24-25, p. 47, lns. 1-12)

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

21

137.    Where language in a trust agreement indicates that amounts owing from employers are plan assets that language, as the intent of the parties, will control.  *Temecula,* 438 F. Supp. 2d at 1165.

a.    The Temecula court observed that *Cline* did not address the "commonly applied exception when the plan document itself identifies unpaid employer contributions as a plan asset," *Temecula,* 438 F. Supp. 2d at 1163.

b.    The general rule of *Cline* "gives way in the face of language in the plan document identifying unpaid contributions as plan assets." *Id.*[1]  See also *Trustees of the Nat'l Elevator Pension Funds v. Lutyk*, 140 F.Supp.2d 407, 410-11 (E.D. Pa.2001) (collecting cases).

138.    "When an employer's contribution becomes an 'asset' of a plan must be determined by reference to the rights and obligations created by the underlying wage agreement." *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 200-01 (S.D.N.Y. 1999); *accord Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1246 (S.D.W.V.1992); *Galgay v. Gangloff*, 677 F.Supp. 295, 301 (M.D. Pa. 1987).

139.    A court must consider "any contract or other legal instrument involving the plan" to determine what is included in plan assets.  *Trustees of the Electrical Workers Health and Welfare Trust v. Campbell,* 2:07-cv-00724 LRH, 2010 U.S. Dist. Lexis 12213 (D. Nev. 2010).

140.    Eshelman's capacity to direct Trust Fund assets to the Trust Funds for the benefit of the Trust Funds' participants and beneficiaries makes him a fiduciary of the Trust Funds with the attendant responsibilities unique to a fiduciary.

## 2.    <u>ESHELMAN COMMITTED A BREACH OF HIS DUTY</u>

141.    A defalcation under §523(a)(4) is defined as "the misappropriation of trust funds or money held in any fiduciary capacity, or the failure to properly account for such funds, including the innocent default of a fiduciary who fails to account fully for money received." (Court Docket #20, p. 4, citing *Lewis v. Scott, (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996).)

---

[1]    The *Temecula* court observed that *Cline* rested on the Eleventh Circuit opinion, *Local Union 2134, United Mine Workers, Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987).  The Eleventh Circuit itself has since explained that *Powhatan* "does not stand for the proposition that unpaid contributions are *never* assets of an ERISA plan until … actually paid into the plan."  Instead, the decision "concerned the general rule, that unpaid employer contributions are not assets of an ERISA plan, and we had no occasion to consider in that case the effect of contrary plan language, which, as we have stated, is the exception to the rule." *Temecula*, 438 F.Supp.2d at 1164, citing *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013-14 n.2 (11th Cir. 2003) (original emphasis).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

142.    Eshelman breached his fiduciary duty by using plan assets to pay for company expenditures other than benefit contributions. (See Plaintiffs' Trial Exhibit 28, p. 363-1362 (BATES stamped WAS 000362-001306))

143.    As a fiduciary, Eshelman had a duty to ensure that "assets of a plan … never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan." 29 U.S.C. § 1103(c)(1).

144.    Intentionality is not a requirement under § 523(a)(4). *In re Niles,* 106 F.3d 1456 (9th Cir. 1997) (plaintiff need only show money was not turned over by fiduciary – burden will shift to debtor to establish no defalcation).

145.    The Ninth Circuit has recognized that "any" control over the disposition of plan money—here funds to satisfy the monthly contributions—"makes the person who has control a fiduciary." *IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir.1997).

146.    Eshelman exercised discretionary authority over the funds when deciding not to make contributions required under the Trust Agreements.  Such conduct constitutes a breach of fiduciary duty under the Trust Agreements—which designate Fund assets for the exclusive benefit of plan members and precludes the employer from having any right, interest in, or title to Fund assets. The same conduct by Eshelman also shows a breach of fiduciary duty under ERISA §§ 1103(c)(1) and 1104(a)(1).  *See Temecula*, 438 F.Supp.2d at 1168-69.

147.    Another district court described this sort of ERISA breach based on paying various business expenses and investments instead of specified contributions, finding fiduciary liability of business officers:

> Once contributions become due and owing, they become plan assets. The above admissions [to use of funds for various expenses], with others in the record, demonstrate that the individual Defendants personally "exercised . . . authority or control respecting management or disposition of" these assets. As a result, the individual Defendants come within the ERISA definition of fiduciary.
>
> Finally, the Court must address whether the individual Defendants breached their fiduciary duties. The Defendants' admissions clearly demonstrate a breach. Fund assets, in the form of due and owing contributions, were either diverted for other purposes or simply not paid as a result of the individual Defendants' personal, discretionary control and management of such. Because the individual Defendants failed to act "solely in the interest of the participants and beneficiaries"

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

23

of the Fund, the Court thus concludes they breached their fiduciary duty.

*Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1246 (S.D. W. Va. 1992). As in *Paybra Mining*, contributions not paid as result of Defendant's personal discretionary control shows a breach of fiduciary duty to act solely in interest of participants and beneficiaries.  The Second Circuit saw the issue as straightforward:

> Once wages were paid to Local 66 members, [the employer] had contractual obligations to the Funds that constituted 'assets' of the Funds by any common definition.  Certainly, an audit of the Funds would have to include such fixed obligations as assets.

*United States v. LaBarbara*, 129 F.3d 81, 88 (2nd Cir. 1997).

148.    An ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interests of the participants" (29 U.S.C. § 1104(a)(1)), is barred from using "plan assets" in any transaction with a "party in interest" (29 U.S.C. § 1106(a)(1)), cannot deal with plan assets "in his own interest or for his own account," and cannot "transfer to, or use by or for the benefit of, a party in interest, any assets of the plan."(29 U.S.C. § 1106).

149.    A fiduciary who breaches fiduciary obligations or otherwise engages in prohibited transactions "shall be personally liable to make good such losses to the plan … and to restore to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary…." 29 U.S.C. § 1109(a); see also *Temecula Mech.*, 438 F.Supp.2d at 1161, citing statute.

150.    The Defendant's defalcation of fiduciary duty under § 523(a)(4) thus included failing to remit the identified accrued benefit contributions to the Trust Funds or to account for those amounts. Courts applying ERISA trust principles in the dischargeability context have found defalcation of fiduciary duty based on an employer's failure to make required contributions to an ERISA fund or plan.  *See Trustees of the Southern California Pipe Trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156, 1165 (C.D. Cal. 2006) (contract language that amounts owing are plan assets shows ERISA fiduciary duty of employer).

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

24

151.    Eshelman acted within his discretionary authority when he used plan assets for his own benefit.  As a fiduciary, Eshelman had a duty to use plan assets to benefit Plaintiffs. By directing plan assets to other uses, Eshelman committed a defalcation of his fiduciary duty to the Plaintiffs, and his debt is nondischargeable under § 523(a)(4).

### 3.    <u>WITHDRAWAL LIABILITY</u>

152.    "Every employer who's obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a CBA, shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145 (ERISA § 515).

153.    Unpaid withdrawal liability is, as a matter of law, treated as a delinquent contribution.  29 U.S.C. § 1451(b) (ERISA § 4301).  Defendant's failure to pay withdrawal liability therefore represents another breach of his fiduciary obligation to make contributions.

### 4.    <u>MOXLEY DOES NOT APPLY</u>

154.    Defendant's citation to *Carpenters Pension Trust Fund for N. California v. Moxley*, C 10-0756 RS, 2011 WL 1225572 (N.D. Cal. Mar. 31, 2011) is misplaced.  The *Moxley* case is neither controlling nor persuasive.

155.    As a decision of the Northern District of California, *Moxley* creates no binding precedent.  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7, 179 L. Ed. 2d 1118 (2011), citing 18 Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011).

156.    However, *Moxley* is factually irrelevant in addition to lacking precedential value. Moreover the case is on appeal, with briefing completed in the Ninth Circuit.

157.    Non-issues here are the key issues of *Moxley:* Have defenses been waived by failure to arbitrate?  Was summary judgment *sua sponte* proper? Has a trust *res* been created? These questions demonstrate that *Moxley* is not useful and not a precedent here.  The mere fact that another court has found an instance where a *different obligation* does not create a fiduciary obligation does not save Bos here.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

25

**C.    523(A)(6)  ESHELMAN'S DEBT IS NON-DISCHARGEBABLE UNDER 523(A)(6) BECAUSE IT DERIVES FROM HIS TORTIOUS CONDUCT RESULTING IN WILLFUL AND MALICIOUS INJURY TO THE LOCAL 39 TRUST FUNDS**

158.    The Court has already recognized the well-settled principle that: "[i]t is a general rule that the principals of a corporation will be held responsible under Section 523 for frauds and intentional torts committed individually."  (Civil Minute Order in Adv. Proc. 10-02476 Court Doc. 83, p. 3, citing *Pacheco v. Smith (In re Smith)*, 232 B.R. 461, 465 (Bankr. D. Id. 1998).)

159.    As discussed in *Jercich*, the Ninth Circuit has held that the standard for § 523(a)(6) applicability  is "an intentional breach of contract . . .accompanied by tortious conduct which results in willful and malicious injury."  *Petralia v. Jercich*, (*In re Jercich*), 238 F.3d 1202, 1205 and 1206 (9th Cir. 2001).[2]  Citing to *Rattan v. United Servs. Auto. Assoc.* 84 Cal.App.4th 715 (2000), and *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994)[3] the *Jercich* court held that *tort recovery* for bad faith breach of a contract is permitted only when "in addition to the breach [of the covenant of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state."

160.    The Court then details the legal duties and public policies Jercich violated by having the clear ability to pay his employee's wages when due, but willfully choosing not to pay, i.e., the public policy favoring the full and prompt payment of wages due an employee, the violation of which is penalized under Labor Code § 203 and criminalized under Labor Code

---

[2] Citing, *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992); *In re Trammell*, 172 B.R. 41 (Bankr.W.D.Ark.1994) (excepting from discharge under § 523(a)(6) a debt arising out of a breach of the covenant not to compete); *In re Ketaner*, 149 B.R. 395 (Bankr.E.D.Va.1992) (same); *In re Smith*, 160 B.R. 549, 553–54 (N.D.Tex.1993) ("[I]t was not necessary for the bankruptcy court to find that [the debtors'] actions constituted an independent tort other than fraud in order to hold the [debt to the plaintiff] nondischargeable pursuant to § 523(a)(6).  The bankruptcy court was only required to find that [the debtors'] willful and malicious conduct caused damage to the [plaintiff]."); *In re Moultrie*, 51 B.R. 368, 373–74 (Bankr.W.D.Wash.1985) (noting that "[o]nly debts arising from tortious acts are nondischargeable under § 523(a)(6)," but that acts involving breach of contract "may also involve tortious acts such as interference with contract relations"); *In re Haynes*, 19 B.R. 849, 851 (Bankr.E.D.Mich.1982) ("[A] debt arising out of a mere breach of contract absent any showing that the purpose of the breach was to cause injury is not a non-dischargeable debt within the meaning of § 523(a)(6)."); *In re Rivera*, 238 F.Supp. 233, 234 (S.D.N.Y.1965) ("[T]he theory of recovery—tort or contract—is immaterial [to the § 523(a)(6) inquiry].").

[3]  Noting that California law imposes an obligation binding every person "to abstain from injuring the person or property of another, or infringing upon any of his rights"; that this "duty is independent of the contract"; and that the "omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty" (citations, quotations, and ellipses omitted).

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

§ 216;[4] and that Jercich's conduct amounted to oppression under California Civil Code § 3294, which by definition must involve "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* at 1207, quoting Cal. Civil Code § 3294(c)(2) and citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516, 869 P.2d 454, 461 (1994).

161.    The California Court of Appeal has held that "the prompt payment of wages due an employee is a fundamental public policy in California… Public policy has long favored the full and prompt payment of wages due an employee." *In re Jercich*, at 1206-1207 citing *Gould v. Maryland Sound Indus Inc.*, 31 Cal. App. 4th 1137.

162.    Defendant's contract breach violated the covenant of good faith and fair dealing and California's public policy to pay wages.  In defining wages, California law specifically includes benefit contributions:  "the term 'wages' should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as part of his compensation." *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal.App.3d 35, 44; *see also Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780.

163.    Further, in *People v. Alves*, (1957) 155 Cal.App.2d Supp. 870, 872, the Court specifically found that payments to a health and welfare fund by an employer are wages. Defendant did not make the contributions required under the CBA and the Trust Agreements.

164.    As a result the Plaintiffs were deprived of wages in the form of benefit contributions.

165.    Because Eshelman's conduct here violates the same legal duties and public policy as Jercich's did, his conduct also is tortious such that § 523(a)(6) applies.

166.     The second and third elements of the standard are that the tortious conduct result in willful and malicious injury.  As shown below, Eshelman's conduct caused both willful and malicious injury.

---

[4] The *Jercich* court explained: "Few, if any, areas of the law are more important than an employer's obligation to pay his employee's wages.  California courts agree, and have time and again underscored the significance of an employer's failure to pay wages." *In re Jercich*, 238 F.3d 1202, 1207 (9th Cir. 2001).

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

27

167.    For purposes of section 523(a)(6), conduct is "tortious if it constitutes a tort under state law." *Lockerby v. Sierra*, 535 F.3d 1038, 1041 (9th Cir. 2008).

168.    Under California law, Defendant has committed a tort by breaching the covenant of good faith and fair dealing.  "It is well settled that, in California, the law implies in every contract a covenant of good faith and fair dealing.

    a.    Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement."  *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 91 (Cal. 1995).  Defendant's actions deprived the Plaintiffs of the benefits of the CBA and Trust Agreements; namely the Defendant deprived Plaintiffs of money owed.

    Eshelman's counsel's reference at trial to *Foley v. Interactive Data Corp.*, 47 Cal.3d 654 is not relevant to the current analysis.  In *Foley*, the California Supreme Court held that tort *remedies* are not necessarily available for breach of the implied covenant of fair dealing in the employment setting.

    The Ninth Circuit in *In re Jercich*, however, held that specifically regardless of *Foley*, the willful non-payment of wages can constitute tortious conduct under California law such that § 523(a)(6) applies.[5]  *In re Jercich* at 1206 fn. 17.

169.    Eshelman's conduct closely mirrors the debtor's in *Jercich* and the same result, non-dischargeability, should follow.

170.    The Ninth Circuit has clearly held that Defendant is precluded from raising contractual defenses to trust fund collection actions. *Southwest Administrators, Inc. vs. Rozay's Transfer*, 791 Fed.2d, 769 (9th Cir.,  1986); see also *California Health and Welfare Trust Fund for California vs. Bla-Delco Construction, Inc.*, 8 Fed.3d, 1365  (9th Cir. 1993)

171.    Such defenses are contrary to the well-settled public policy to simplify and expedite trust fund actions. *Id.*

**1.**    **Eshelman's debt arose from both a willful and a malicious injury and is therefore non-dischargeable under 11 U.S.C. 523(a)(6)**

    **a.**    **Eshelman's actions meet the standard for willful injury**

172.    Eshelman had the requisite subjective intent to bring about harm to the Local 39 Trust Funds.

---

[5] In this analysis it is important to distinguish between cases dealing with *the availability of tort recovery* and those dealing with the applicability of § 523(a)(6), which requires *tortious conduct*.

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

a.    The evidence shows that Eshelman deliberately failed to comply with the CBA to make contributions due for "probationary employees" and for those working at least eighty (80) hours per week.

b.    Eshelman acknowledged deliberately failing to make these contributions, though they were owed.

c.    Eshelman further acknowledged specifically paying at least one employee in lieu of reporting his covered hours to the Trust Funds, specifically so that Eshelman could avoid the expense of making contributions.

d.    This admission satisfies the willful injury requirement of § 523(a)(6), which "is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *In re Jercich,* at 1208.

e.    Even if Eshelman believed an audit would catch the unpaid amounts, there is an implicit understanding that the Plaintiffs would lose at least the value of the contributions being made in a timely manner and the cost of the audit.

f.    Defendant may not rely on a prior audit as a defense to its obligations. *Northern District of California Northwest Administrators, Inc. vs. Sacramento Stucco*, 86 F. Supp. 2d 974 (N.D. Cal. 2000).

173.    The Ninth Circuit's leading case on what constitutes willful injury is *Carillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002).

174.    *In re Su* held that a debtor whose debt arose through the negligent act of running a red light could not be found to have committed willful injury because the trial court had applied the wrong standard in deciding what constitutes willful injury. The trial court applied an objective standard to determine whether a willful injury under the statute had occurred.

175.    The Court of Appeals held that in light of the *Jercich* holding, the debtor must possess a subjective motive to inflict injury or must have believed that injury is substantially certain to result from their conduct—a subjective standard should be applied to determine if a debtor's injury was willful. The court held "that § 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Su*, 290 F.3d at 1142.

176.    Eshelman testified that he knew the Trust Funds were owed the contributions – he even suggests that he offered to pay some of them during the underlying litigation, an obvious acknowledgement that he knew they were owed. (Transcript I, p. 142, lns. 22-25, p. 143, ln. 1.)

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

a.     In spite of this knowledge, he decided not to pay the Local 39 Trust Funds but rather to use his funds for other purposes as shown by the General Ledger and other documentation of the company's finances.

177.    The injury he inflicted is therefore willful under *Jercich* and *In re Su*.

**b.     Eshelman's actions meet the standard for malicious injury**

178.    Eshelman's actions meet the requirements for malicious injury.  "'[M]alicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'"  *In re Jercich* 238 F.3d at 1209, citing *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997).

179.    "Malice under § 523(a)(6) does not require a showing of biblical malice, i.e., personal hatred, spite, or ill-will."  *Thiara v. Spycher Bros. (In re Thiara),* 285 B.R. 420, 434  n. 15 (B.A.P. 9th Cir. 2002).  "Moreover, we held in *In re Britton*, 950 F.2d 602, 606 (9th Cir. 1991), that a court applying this test must take into consideration a policy that favors the victims."  *In re Bammer*, 131 F.3d at 791.

180.    Eshelman's actions satisfy the four prong test for malicious injury: 1) He knew he owed the Trust Funds the contributions under the CBA and the subscriber's agreement—and his failure to fulfill the required obligations under those contracts and state and federal law constitutes a bad act; 2) He *intentionally* chose to use his funds for purposes other than making the benefit payments; 3) His conduct caused monetary injury to the Trust Funds, and 4) He has pointed to no just cause or excuse for his conduct.

181.    The Ninth Circuit's leading case on § 523(a)(6) scienter makes clear that a wrongful intentional act, such as Eshelman's refusal to pay benefits, done without just cause "is 'willful or malicious' even absent proof of a specific intent to injure."  *Impulsora del Territorio Sur, S.A. v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1443 (9th Cir. 1986).

182.    "As set forth in *Cecchini*, the act must necessarily cause harm to the creditor, but the creditor need not show that the debtor acted with an intent to harm the creditor."  *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991).

**WEINBERG, ROGER & ROSENFELD**
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

30

183.    Eshelman's actions deprived the Trust Funds of the benefits of the CBA and the subscriber's agreement.

    a.    Eshelman deprived the Trust Funds of money owed.

    b.    The records show that A/C Service had the money to pay the Local 39 Trust Funds, but that Eshelman used his funds for other purposes.

    c.    Although the jobs that A/C worked on supplied the Company with funds to pay Trust Fund contributions, Eshelman chose to use the Company's funds for other purposes.

184.    In choosing to use the funds for purposes other than Trust Fund contributions, Eshelman deprived the Trust Funds of the money that was due to them for the work performed by their participants, his employees.

185.    Eshelman's conduct therefore caused malicious injury.

## III.    CONCLUSION AND ORDER

186.    Based on the foregoing, the Court concludes that Defendant William R. Eshelman is liable for non-dischargeable debt to the Plaintiffs under § 523(a)(4) and § 523 (a)(6) in the following amounts:

    a.    $98,159.20 in underpayments;
    b.    $41,487.73 in interest through December 31, 2008;
    c.    $10,151.62 in liquidated damages;
    d.    $10,451.25 in testing fees;
    e.    $33,972 in withdrawal liability;
    f.    Other interest as appropriate

187.    Plaintiffs may recover taxable cost upon timely application. Civ. L.R. 292, Bankr. L.R. 1001-1(c).

188.    Plaintiffs may apply for attorneys' fees upon timely application. Civ. L.R. 293, Bankr. L.R. 1001-1(c).

///

///

///

///

///

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

31

1    To the extent that any portion of a Finding of Fact contains or constitutes a Conclusion of

2 Law, such portion shall be deemed to be a Conclusion of Law, and to the extent that any portion

3 of a Conclusion of Law contains or constitutes a Finding of Fact, such portion shall be deemed a

4 Finding of Fact.

5

6 Dated:                                    By the Court

7                                           _____
                                            MICHAEL S. McMANUS,
8                                           UNITED STATES BANKRUPTCY JUDGE

9

10 Dated:  November 5, 2012                  WEINBERG, ROGER & ROSENFELD
                                            A Professional Corporation
11

12                                          /s/ Jordan D. Mazur
                              By:    _____
13                                          JORDAN D. MAZUR
                                            Attorneys for Plaintiffs
14                                          Stationary Engineers Local 39,
                                            International Union of Operating Engineers AFL-
15                                          CIO and Stationary Engineers Local 39 Trust
                                            Funds
16
125174/689727
17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501
(510) 337-1001

32